**Opinion issued August 4, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-26-00200-CV**

————————————

**IN THE INTEREST OF A.S.E. A/K/A A.E., A CHILD**

———

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Case No. 2024-02648J**

———

**MEMORANDUM OPINION**

Appellant P.L.E. a/k/a P.E. (Father) appeals the trial court's judgment terminating his parental rights. We affirm.

## I.  Background

A.S.E.[1] tested positive for amphetamines at birth in February 2023. A.S.E.'s Father and Mother also tested positive around that time for amphetamines. They

---

[1]  We refer to the child and her relatives by pseudonyms to protect the child's privacy. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.9.

blamed the positive tests on their taking cold medicine before the birth. The Department of Family and Protective Services became involved and referred Father and Mother for Family Based Safety Services (FBSS). An FBSS family plan of services was created whereby A.S.E. remained in Father's and Mother's care, with Father's mother (Grandmother) acting as a safety monitor. The plan also provided that Father and Mother would attend parenting classes, obtain certain assessments, and submit to random drug testing.

Father did not complete his parenting classes despite the urging of caseworkers nor a psychosocial evaluation despite attempts to reset it. Although Father passed several urine-based drug tests from April 2023 to July 2023, he was positive for amphetamines and methamphetamines in one urine test and positive for amphetamines, methamphetamines, and marijuana in a hair-based test. Father failed to appear for any tests from the end of July 2023 through December 2023 and consequently was deemed to have tested positive during that time. Father's counselor expressed concerns about his participation in drug treatment, and he was unsuccessfully discharged from treatment in January 2024 with a recommendation he receive intensive in-person treatment or enter a residential treatment program.

Similarly, Mother did not complete her services, failed several drug tests, and refused treatment for possible mental-health issues.

During the 2023 FBSS phase, Father and Mother lived with A.S.E. at Grandmother's house. Grandmother was supposed to monitor A.S.E., but twice, Mother left the house with A.S.E. in violation of the safety plan. Additionally, Father was charged with theft in November 2023.

In January 2024, the Department filed a petition for the parents' participation in services, which was granted. Father was referred to intensive in-person drug treatment in February 2024 but did not complete an assessment for over a month due to his failure to communicate. Even then, Father did not comply with the treatment, including a recommendation that he obtain inpatient drug treatment.

From February 2024 until October 2024, Father failed to appear for several drug tests. In May 2024, his hair test was positive for amphetamines and methamphetamines at higher levels than they were in 2023, and he also tested positive for marijuana.

In June 2024, a caseworker contacted Grandmother after discovering Mother's phone number was out of service; Father's phone number was also out of service at the time. Grandmother informed the caseworker that she believed Father and Mother were living with A.S.E. at a friend's house, in violation of the safety plan. When the caseworker finally contacted Mother, Mother admitted leaving Grandmother's house with the child despite knowing Grandmother was the safety

3

monitor.  In August 2024, Father and Mother were again alone with A.S.E. without Grandmother.

In late May 2024, Father pled guilty to committing theft earlier that month. Father was charged with evading arrest in September 2024 and convicted for this offense in January 2025.

In October 2024, Father was charged with possession of methamphetamines. Violating the safety plan, Mother went alone with A.S.E. to retrieve Father from jail. During the return drive, Father and Mother got into an argument, and he put his hands around her neck.

After these failures, the Department filed suit in October 2024, seeking termination of Father's and Mother's parental rights if A.S.E. could not be safely reunified with them.  From that time until trial in October 2025, Father had several negative urine tests.  He had positive hair tests in November and December 2024 and March and April 2025.  These tests showed an increase in the amount of amphetamines and methamphetamines in his system between May 2024 and October 2024 and between March and April 2025.  Father also failed to take tests in February, March, April, and October 2025.

In March 2025, Father started substance-abuse therapy but by June, had been unsuccessfully discharged for missing four sessions.  Once again, it was recommended that Father participate in inpatient drug treatment.

4

Father did not provide any proof that he completed parenting class in 2025 and failed to complete a psychological assessment. He continued to live with Grandmother in 2025, except for times he was in jail. Father told the Department he was doing odd jobs for Grandmother and working as a mechanic. However, he did not provide proof of employment. Father attended all court hearings in 2025.

Father's criminal activity continued in 2025. In February, he was charged with driving with a suspended license and without insurance and was taken to jail. In August, he was charged with evading arrest for ignoring police commands to stop after he was caught shoplifting at a store. The police officer followed Father to his car and continued ordering him to stop, but Father drove away. Police arrested Father for evading arrest in September 2025 and also charged him with theft.

The trial court held a bench trial on the Department's petition to terminate parental rights on October 22, 2025. Mother signed an affidavit relinquishing her rights to A.S.E. Father moved for a continuance to allow him more time to participate in inpatient drug treatment. The trial court denied the continuance.[2]

Father testified that it had been six months since he drank alcohol or used illegal drugs. He stated that his last stint in jail and the risk of losing A.S.E. changed him and he wants to prove he can be a father to A.S.E. He had been trying to get into inpatient drug treatment but had not yet because he lost his identification card

---

[2] Father does not complain about the continuance denial on appeal.

5

and only recently obtained a new one. He continued to live with Grandmother, who randomly drug tested him whenever he left the house with friends. He believed Grandmother offers him a good support system. He explained that he had not worked in over one year but had been performing odd jobs for money. Father testified that he visits with A.S.E. online every other day. He also stated that his relationship with Mother ended one or two years ago and they do not speak, although he conceded they spoke a week or two before regarding car issues.

The Department caseworker testified that Father has not been able to prove he can care for A.S.E. for the two-and-a-half years since she was born. The caseworker stated that Mother successfully obtained a court order that prevents Father from coming near her, and yet they continue to be around each other, including Father being at her house the week before trial. The caseworker said Father's continued relationship with Mother is concerning because they both struggle with drug addiction. The caseworker praised Grandmother for keeping Father straight and sharing her drug tests with the Department. The caseworker opined that Father's drug issues are the problem and that he is sincere in trying to get into inpatient treatment. She also stated Father's urine tests in September and October 2025 have been clean, although he did not take his scheduled hair test in late September 2025. Father took a hair test the day before trial, but the results were not available. The caseworker testified that the Department was requesting

termination because of Father's inability to stop using drugs and his criminal behavior and incarceration, which causes instability for and trauma to a child.

The child advocate testified that A.S.E. is thriving with her maternal aunt and uncle in Kansas, who want to adopt her. Since being in this placement, A.S.E.'s communication, behavior, and mobility have improved. The child advocate elaborated, "You can tell [A.S.E. is] very well cared for and loved. . . . She's just a different little girl. She's really growing into herself, and she loves her family. She loves the attention. She loves the space she's in." The child advocate stated that Father has not responded to her calls. The child advocate's report, admitted at trial, indicated that Mother says Father has "demonstrated aggressive, threatening, and inappropriate behavior towards [Mother]."

Grandmother testified that, before Father most recently went to jail in September 2025, he was in a bad place and not allowed at her house. Grandmother stated that since Father was released from jail, their relationship improved and Father has been doing well. Grandmother believed Father is improving because he is staying away from Mother. However, Grandmother testified that the week before, Mother and Father were together alone in Grandmother's house and they left, "did things," and then returned to the house together. This surprised Grandmother because Mother has a protective order against Father. When asked what she wanted

the trial court to do, Grandmother did not state return A.S.E. to Father but said she wanted to take possession of A.S.E.

On February 10, 2026, the trial court signed an order terminating Father's parental rights, finding he committed predicate acts under 161.001(b)(1)(E) and (O) and that termination is in A.S.E.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(E) (dangerous conduct), (O) (drug abuse). Father now appeals.

## II. Analysis

In a single issue, Father contends the evidence is legally and factually insufficient to support the trial court's best-interest finding.

### A. Standard of review and relevant law

To terminate parental rights under the Family Code, the Department must establish by clear and convincing evidence that (1) a parent committed one or more predicate termination grounds, and (2) termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. "This heightened burden of proof affects the standard of review in an evidentiary challenge on appeal." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022).

In a legal-sufficiency review in a termination case, we cannot ignore undisputed evidence contrary to a finding, but we must otherwise assume the factfinder resolved disputed facts in the finding's favor. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). The evidence is legally insufficient if, viewing all the evidence in the light most favorable to a finding and considering undisputed contrary evidence, a reasonable factfinder could not form a firm belief or conviction that the finding is true. *Id.* at 631. In a factual-sufficiency review, we must weigh disputed evidence contrary to a finding against all the evidence in the finding's favor. *Id.* The evidence is factually insufficient if, in view of the entire record, the disputed evidence a reasonable factfinder could not credit in the finding's favor is so significant that the factfinder could not have formed a firm belief or conviction that the finding is true. *Id.* In reviewing evidentiary sufficiency, we are mindful the factfinder determines witness credibility. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Courts consider non-exclusive factors in reviewing the sufficiency of the evidence supporting a best-interest finding: (1) the desires of the child; (2) the

9

present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child;  (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

**B.      Sufficiency of the evidence supporting the best-interest finding**

On appeal, Father points to the following evidence as weighing against the best-interest finding.  Father testified that he has changed and, since his release from jail a few weeks earlier, he wants to fight to keep A.S.E.  He also passed several urine tests leading up to trial.  He recently obtained a new identification card and plans to attend inpatient drug treatment.  Father visits with A.S.E. online every other day.  He also has a support system via Grandmother, who wants custody of A.S.E.  This evidence is not inconsequential in considering whether the Department met its high burden of proving termination of Father's parental rights is in A.S.E.'s best interest.  But it is also not viewed in a vacuum.

Over the two-and-a-half years the Department has been trying to assist Father, he has (1) failed several hair tests (at times with higher drug levels than previous

10

tests) and did not appear for tests many times, (2) been unsuccessfully discharged from two drug programs and never enrolled in inpatient drug treatment despite recommendations to do so, (3) been charged with theft, evading arrest (including for evading arrest in September 2025), and drug possession,[3] with some charges resulting in convictions, (4) not completed a parenting class, and (5) not obtained steady employment.

Here, the caseworker testified that the Department was requesting termination because of Father's inability to stop using drugs and his criminal behavior. Considered altogether, Father's continuous drug use and criminal issues over the two-and-a-half years before trial support that terminating his parental rights is in A.S.E.'s best interest. "A parent's past conduct is probative of his future conduct when evaluating the child's best interest." *In re J.C.D.Y.*, No. 01-25-00640-CV, 2025 WL 4099753, at *17 (Tex. App.—Houston [1st Dist.] Feb. 3, 2026, pet. denied) (mem. op.). "[E]vidence that the parent continued to use illegal drugs even though the parent knew [his] parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being." *In re E.G.A.*, No. 01-24-00204-CV, 2024 WL 3941021, at *17 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, pet. denied) (mem. op.) (quoting *In re K.A.C.*, 594 S.W.3d 364, 373 (Tex. App.—El Paso 2019, no

---

[3]    Father's criminal history also includes drug possession from his teenage years.

11

pet.)). Additionally, our precedent says that "[a] parent's repeated arrests and incarcerations is evidence that the parent will be unable to satisfy his children's emotional and physical needs." *In re K.M.*, No. 01-19-00285-CV, 2019 WL 3949483, at *9 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, pet. denied) (mem. op.).

Father will not be able to meet A.S.E.'s present and future physical and emotional needs, protect her from dangers, or provide a stable home if he is repeatedly confined to jail or prison due to his chronic drug use and criminal behavior. *See Holley*, 544 S.W.2d at 371–72 (listing factors). Twice Father was unsuccessfully discharged from drug-treatment programs due his failure to participate and stay drug-free, including a discharge in late June 2026, and his hair was twice positive for amphetamines and methamphetamines at increased levels compared to prior hair tests. Father's two charges for evading arrest (one that occurred less than two months before trial involved him driving off while a police officer was knocking on his car window and ordering him to stop) demonstrate particularly poor decision-making ability close to trial. *Id.*[4]

---

[4] We are cognizant of *In re K.N.*, in which the Supreme Court recently concluded evidence of a father's isolated criminal misconduct and non-chronic drug use were legally insufficient to support predicate termination findings against him under subsections 161.001(b)(1)(d) (placing child, or allowing child to remain, in conditions or surroundings that endanger child) or (e) (engaging in conduct, or placing child with persons who engage in conduct, that endangers child). No. 24-0881, 2026 WL 1614378, at *13–14 (Tex. June 5, 2026). Here, Father's course of

12

Father had multiple years to complete services and establish proper parenting behavior but ignored the Department's, service providers', and the child advocate's efforts to assist him. *See In re R.R.A.*, No. 14-22-00217-CV, 2025 WL 1375185, at *7 (Tex. App.—Houston [14th Dist.] May 13, 2025, no pet.) (mem. op.) ("Father's course of conduct for at least the seven months preceding the final hearing supports the trial court's finding that termination was in the children's best interest."). He showed real interest in A.S.E. only in the weeks before trial. *See In re J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices."). Father's years-long drug and criminal history undermine his newly expressed interest in changing, and it was the trial court's prerogative to determine the credibility of Father's testimony. *See In re A.A.*, 670 S.W.3d 520, 534 (Tex. 2023) (concluding that, although some evidence weighed in favor of preserving mother's parental rights, "ample evidence of [m]other's drug use throughout the children's lives, her continued drug use during the case, and her history of instability provided sufficient evidence to support the trial court's best-interest finding"); *In re M.G.D.*, 108 S.W.3d 508, 513 (Tex. App.—Houston [14th

conduct while the Department has been involved with A.S.E. demonstrates his drug use and criminal activity are chronic behaviors he was unwilling to improve even with his parental rights on the line, and the Supreme Court reiterated in *K.N.* that chronic crime and drug issues can support predicate findings. *See id.* (citing cases).

Dist.] 2003, pet. denied) (observing the factfinder is "not required to ignore a long history of dependency and abusive behavior merely because it abates as trial approaches").

Finally, contrasting Father's persistent instability with A.S.E.'s current placement with her maternal aunt and uncle—where her communication, behavior, and mobility have improved and she is thriving—the trial court could have inferred that the current placement is where A.S.E. would want to remain if she could express her desires. *See Holley*, 544 S.W.2d at 371–72; *In re A.J.D.-J*, 667 S.W.3d 813, 833 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (explaining circumstantial evidence may support where child wants to live). A reasonable factfinder could have found that it is in A.S.E.'s best interest to obtain certainty and permanence with her current caregivers *now* than to further delay such things in hope that Father might eventually demonstrate what he has had A.S.E.'s entire life to prove. *See In re K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017) ("The child's best interest is inherently threatened by undue uncertainty and delay in finally determining where the child will live and who will raise her."); *In re E.D.*, 682 S.W.3d 595, 612 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("Certainty and permanence cannot be achieved as long as the mother retains her rights, and the factfinder was not obliged to opt for a disposition less severe than termination in the face of clear and convincing evidence that the

14

mother has a continuing drug problem that likely will prevent her from discharging her parental responsibilities going forward.").

We conclude the *Holley* factors—which require us to evaluate the evidence holistically and consider its cumulative force, rather than weighing each individual piece of evidence in isolation—support a finding that termination of Father's parental rights is in A.S.E.'s best interests. *See In re A.J.D.-J.*, 667 S.W.3d at 829. Viewing all of the evidence in the light most favorable to the trial court's best-interest finding and considering undisputed contrary evidence, the evidence is legally sufficient to support the finding. *See A.C.*, 560 S.W.3d at 631. The evidence is also factually sufficient because, viewing it all, the disputed evidence a reasonable factfinder could not credit in the finding's favor is not so significant that the trial court could not have formed a firm belief or conviction that the finding is true. *Id.* We overrule Father's sole issue.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Caughey, Johnson, and Dokupil.

15